UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AARON VOYMAS,

                         Petitioner,          **No. 10-CV-6045(MAT)**
        -vs-                                   **DECISION AND ORDER**

DAVID UNGER, Superintendent,

                         Respondent.

---

## I.    Introduction

Petitioner, Aaron Voymas ("Voymas" or "Petitioner"), has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner's state custody arises from his conviction on charges of first degree rape and third degree sexual abuse in connection with his repeated acts of incest against his younger sister.

## II.   Factual Background

The victim, M.V., was born on March 19, 1985. T.148-49 (Numbers preceded by "T." refer to pages from the transcript of Petitioner's trial.) . When M.V. was four or five years old, her parents, John Voymas and Deirdre Voymas (now  Dye), divorced, and M.V. went to live with her father in Michigan for "a year or two." T.148-51. Subsequently, her mother regained custody of M.V., remarried, and the family, including M.V., her two older brothers, her mother, and her stepfather, moved from Michigan to Tonawanda, New York in Erie County. T.151. They later moved to four different locations in Canandaigua, New York.

M.V.'s two brothers, Petitioner and Adam Voymas, are approximately two and a half and five years older than M.V., respectively. When M.V. was around five years old, her brothers began to touch her inappropriately. T.149, 153-54. When she was about seven, both of her brothers "start[ed] being very forcible," "aggressive[ly]" abusing her. T.154-55. Her brothers would "[t]ake [her] pants off and [her] panties," "grab at [her] genitals," and "force their penises into [her] vagina." T.154-56. At first, M.V. "tried to fight it, fight it off . . . [b]y trying to hold them back or push them off and kick them." (T.155-56). However, she was never able to prevent their assaults because both brothers were bigger than she was. T.155-56.

The abuse continued at the various locations to which M.V.'s family moved. T.155. M.V. recalled one incident in particular that occurred at their home on West Lake Road in Canandaigua when she was thirteen-years-old. T.156-57, 164, 190-91, 200. Her parents were not at home, and she was sitting on a bed playing a video game. Petitioner came up from behind her, pushed her down on her stomach, pulled her pants and panties down, and raped her from behind as he held her down. T.157-60, 191-92. M.V. pleaded with him to stop, but he ignored her and continued to penetrate her until he ejaculated. T.157-62, 192. She did not try to escape "because he was bigger than [M.V.] and . . . it happened all the time, so [physical resistance] was pointless." T.160.

-2-

M.V. testified this rape took place in May of 1998, when she was in eighth grade. T.185-86. She was able to determine that the rape occurred between March 19, 1998, and late June 1998, when she was thirteen and Petitioner was fifteen, because she specifically remembered that it took place in the springtime, after her 13th birthday (i.e., March 19th), on the same day that her brother, Adam, had also molested her, and shortly before Adam graduated from high school in June. T.162-64.  M.V. also remembered that it took place at the house on West Lake Road, from which the family moved in July 1998. T.144-48, 164.

M.V. described another incident which occurred at the family's Parrish Street house in Canandaigua. T.165. Petitioner, who was then sixteen, grabbed M.V.'s breasts and fondled her vagina over her pants for a "few minutes." T.165-67, 200-02, 212. M.V. was thirteen or fourteen at the time. She remembered the event because it was the last time that Petitioner sexually abused her. T.165-68. M.V. did not physically resist because resistance "was pointless," as Petitioner "always did it and got away with it and he was bigger than [M.V.]." T.167. However, because M.V. "was standing there rigid and still . . . [Petitioner] knew that it wasn't consensual." She surmised "he felt guilty about it because . . . he just stopped" and said "something like . . . 'I know this has been wrong and I'm not going to do it anymore.'" T.167-68.

-3-

In May 1998, M.V. was being treated with medication for depression, and the doctors "were always switching medications because nothing was working." T.187-88. M.V. acknowledged that she was "a disciplinary problem in school" beginning in the eighth grade. T.188. She would often deliberately misbehave at school in order to receive after-school detention, because the extra hour at school "would lessen the likelihood [that she] would be raped and molested" by her brothers. T.213-14.

Soon after she turned eighteen, M.V. got married and moved to Texas with her husband. T.168-70. While in counseling, she eventually revealed details regarding the repeated sexual abuse by her brothers. T.171. As a result of those conversations, she contacted the authorities in Texas and later in Canandaigua. T.171-72.

It was suggested that M.V. separately call both Petitioner and her brother Adam and record their conversations. T.172-73, 198-99. On January 11, 2005, M.V. telephoned Petitioner, who was stationed at an army base in Kentucky, and recorded the call using equipment supplied by the Abilene Police Department. T.172-74. M.V. was not able to record the entire call, because "the tape ran out and [she] didn't know how to flip it over," but only a minute or two at the end of the conversation went unrecorded. T.175, 199-200. The audiotape was played in court, and the jury was provided with a transcript of the recording. The trial court instructed the jury

that the transcript was "not evidence" and was only provided to "assist [the jury] in listening to the actual tape recording." T.180-82.

During the recorded conversation, Petitioner admitted that he first started "having sex" with M.V. when they lived in Tonawanda, New York (i.e., the town where the family first lived after moving from Michigan when M.V. was six or seven years old). He stated that he realized that what he did to M.V. was wrong and pointed out that he was no longer abusing M.V. He apologized for what he had done but advised her to "[a]ccept that you got raped" and "that your perception of your brothers is always going to be that they're scum . . . ." Court Exhibit B at 2-4, 9, 10. Petitioner acknowledged that, during the time he was raping M.V., he was, in fact, "scum." Id.

On February 10, 2005, detectives from the Canandaigua Police Department traveled to the Kentucky Army base where Petitioner was stationed. T.219-21, 241. Petitioner waived his rights and gave a written statement confessing to having had "sexual intercourse" with his sister "between six and eight times" at several locations beginning when she was about seven years old. T.234-38. In the first incident, when M.V. was approximately seven and Petitioner was approximately nine, both Petitioner and his brother had "sexual intercourse" with M.V. T.234-35. Petitioner also acknowledged one particular incident in which he had "[s]exual intercourse" with

M.V. at the family's West Lake Road house, during which M.V. "[m]ost likely" asked petitioner to stop. T.236-37. Petitioner further stated that his "sexual relationship" with M.V. ended when Petitioner was approximately sixteen. T.236.

Petitioner, 210 pounds and 5'11"-tall at the time of trial, took the stand and denied having had a sexual relationship with M.V. He also denied knowing whether his brother Adam had molested her. T.267, 323, 346. He recalled the January 11, 2005 telephone conversation with M.V. that she had recorded. T.268, 270. He claimed, however, that he had been "groggy" during the conversation because he had been roused from sleep to answer the call. T.270, 326, 333, 337, 347. Petitioner also claimed, among other things, that M.V. had earlier told him that in 2004 she had been raped in Abilene, Texas, so in the recorded conversation he had "tr[ied] to help her with" that incident. T.272, 347, 357-58. Petitioner claimed that he had apologized to M.V. during the call not because he had actually done anything wrong, but because it was his "understanding that she thought [he] had wronged her." T.275, 345.

Petitioner insisted that he did not remember making various statements recorded on the audiotape. T.274-79. He claimed that during the call, he had "gotten wrapped up in [M.V.'s] wording and did not pay attention to it." T.281-82, 349-50, 356, 359-61. He also claimed that his sister "tricked" him into making certain admissions. T.361-62.

When Petitioner finally realized that M.V. was accusing him of having had "sexual experiences" with her, he thought she was "delusional" and fabricating these allegations. T.352-53. Petitioner explained that he did not deny her accusations because his "only understanding of delusional people is you can't reason logic with them . . . ." T.353. Petitioner stated that he was just "playing along," trying to "placate" her. T.353-54, 357.

With regard to his written statement to the police, Petitioner testified that he had slept "[o]nly a little bit" on the night before his interview, and that his rights had not been read to him until after the statement was written. T.283-84, 289, 363-64. According to the detectives, Petitioner "did not appear tired" or "drowsy" at the time of the interview, and did not "complain about . . . lack of sleep." T.250, 261. Moreover, Petitioner had brought his own food to the interview, and he conceded that the interviewers never touched him. T.371-72.

Petitioner claimed that he signed the confession because he "became weary after being questioned" for "[o]ver an hour," and "just wanted to give [the police] the answers they were asking for." T.289-90, 292-94, 368, 371-75. He claimed that the police refused to "believe [him] when [he] told them the truth," so he gave them the answers that "[t]hey wanted." T.295-96, 298-311. He also claimed that he was "confused" and "rattled" during the interview. T.299-300, 374-77.

The jury disbelieved Petitioner's version of events and returned a verdict convicting him of all counts: first-degree rape, incest, and third-degree sexual abuse.

The court sentenced Petitioner, as a Juvenile Offender, to a term of three to nine years imprisonment on the rape count. The court dismissed the incest count.[1]  Because Petitioner committed the sexual abuse crime while he was an adult (i.e., sixteen-year-old), the trial court determined that he should be sentenced as an adult, although, being less than eighteen, he was eligible for Youthful Offender status.

On appeal, the Appellate Division found that the trial court erred in failing to grant that part of Petitioner's omnibus motion seeking to dismiss the third count of the indictment, charging him with sexual abuse in the third degree, on the ground that it was facially defective in that it failed to set forth a time interval that reasonably served the function of protecting defendant's constitutional right to be informed of the nature and cause of the accusation. People v. Aaron V., 48 A.D.3d 1200, 1201, (App. Div. 4th Dept. 2008)(citations omitted). The Appellate Division held that the 12-month period was unreasonable in view of the fact that the victim was thirteen- or fourteen-years-old during that time period

---

[1]

Because the crime of incest was not one that would qualify for "juvenile offender" treatment, i.e., treatment as an adult, the incest count was required to be dismissed under New York Criminal Procedure Law ("C.P.L.") § 310.85

and thus was capable of discerning, if not exact dates, at least seasons, school holidays, birthdays, or other events which could establish a frame of reference to assist her in narrowing the time spans alleged. Id. (citations omitted). The remaining convictions were affirmed. Id.

## III. Discussion of the Petition

### A.   Defective Indictment

Petitioner argues that the indictment under which he was charged was not specific enough to meet the Sixth Amendment guarantee that a defendant be "informed of the nature and cause of the accusation" against him. In particular, Petitioner alleges that the indictment was defective in that it contained a bare recitation of the language of the statute; alleged a time frame of 4½ months on the rape charges and one year on the sexual abuse charge; and did not specify which alleged acts in the rape charge satisfied the elements of "forcible compulsion."

"An indictment need only provide sufficient detail to assure against double jeopardy and state the elements of the offense charged, thereby apprising the defendant of what he must be prepared to meet." United States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir. 1975) (citation omitted). To accomplish this, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime[.]" Id. (citations omitted). Challenges to

state indictments will merit habeas corpus relief only in the exceptional case where the indictment fails to satisfy the basic due process requirements: notice of the time, place, and essential elements of the crime. Scott v. Sup., Mid-Orange Corr. Facility, No. 03 Civ. 6383(RJD)(LB), 2006 WL 3095760, at *6 (E.D.N.Y. Oct. 31, 2006) (citing Carroll v. Hoke, 695 F. Supp. 1435, 1438 (E.D.N.Y. 1988)).

Petitioner's specific complaint about the rape count's time-frame is meritless as a matter of Federal Constitutional law and New York law. Although the indictment specified a period of time-rather than a specific date-in which Petitioner committed the rape, the indictment met the constitutional standards referred to above. Accord, e.g., Rodriguez v. Hynes, CV-94-2010 (CPS), 1995 WL 116290, at *4 (E.D.N.Y. Feb. 27, 1995) ("[W]here time is not an essential element, it suffices to state the time in approximate terms, as long as such a statement is reasonable.") (citing United States v. Bagaric, 706 F.2d 42, 61 (2d Cir. 1983), cert. denied, 464 U.S. 840 (1983)). The 4½-month time-period on the rape charge was not unreasonable especially where, as here, the complaining victim was a child. See Rodriguez, 1995 WL 116290, at *4 (dismissing habeas claim alleging indictment insufficient due to lack of specific date; "[c]onsidering the fact that young victims often do not remember the exact date of when an alleged offense occurred, the time spans in the indictment [charging sexual abuse

of a minor] are not unreasonable"); see also Valentine v. Konteh, 395 F.3d 626, 632 (6th Cir. 2005) ("This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements.") (collecting cases); Fawcett v. Bablitch, 962 F.2d 617, 619 (7th Cir. 1992) (rejecting a due process challenge to an indictment that set forth a six-month period of time during which the defendant allegedly sexually abused a minor child, and finding that the indictment "afforded [the defendant] notice sufficient to permit him to defend against the charge").

Furthermore, there is no requirement that the statutory definition of "forcible compulsion be set forth in the indictment. New York Penal Law § 130.00 defines the phrase and thus puts the parties on notice as to what constitutes "forcible compulsion" under the law when it is alleged in an indictment. "Forcible compulsion" is not an element of the crime which must be set forth in the indictment. Best v. Kelly, CV-88-0530, 1998 WL 76621, at *2 (E.D.N.Y. July 7, 1988) (dismissing habeas claim that indictment failed to specify two allegedly essential elements, that the sexual intercourse was without consent, and that the lack of consent resulted from forcible compulsion).

### B.   Erroneous Admission of Uncharged Crimes

Petitioner asserts that his due process rights and Sixth Amendment right to present a defense were violated because

(1) M.V., the victim, testified to the grand jury that Petitioner's brother committed acts similar to those Petitioner committed, although M.V. stated that Petitioner was not aware of his brother's acts; (2) in pretrial proceedings and at trial, the prosecution referred to, and the court admitted, uncharged acts by both Petitioner and his brother "that allegedly occurred prior, and unconnected to, the charges of the indictment"; and (3) the court failed to determine whether the prejudicial effect of such evidence outweighed its probative value.

Petitioner's claim regarding evidence heard by the grand jury is not cognizable on federal habeas review. See, e.g., Lopez v. Riley, 865 F.2d 30, 32-33 (2d Cir. 1989) (holding that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in a federal court").

Although prior uncharged acts by Petitioner and his brother were occasionally referred to during certain pre-trial proceedings, including at a joint suppression hearing, Petitioner has failed to explain how such references could have violated his constitutional rights at trial or unfairly prejudiced his case.

Here, Petitioner cites no Supreme Court case, and the Court is aware of none, holding that the admission of evidence of uncharged crimes violates the Due Process Clause of the Fourteenth Amendment.

Accord <u>Parker v. Woughter</u>, 09 Civ. 3843(GEL), 2009 WL 1616000, at *2 (S.D.N.Y. June 9, 2009). To the extent that it can be assumed that in some circumstances the admission of such evidence can be so significant as to deny a defendant a fair trial, that cannot be the case here. The Appellate Division held that evidence of his prior sexual misconduct with the victim, his sister, was properly admitted because that evidence was relevant in establishing that 'defendant's sexual act [was] perpetrated against the victim by forcible compulsion.'" <u>People v. Aaron V.</u>, 48 A.D.3d at 1201 (citations omitted). New York case law is well-settled that "evidence of a defendant's prior abusive behavior toward a complainant may be admissible to prove the element of forcible compulsion in a rape case," <u>People v. Cook</u>, 93 N.Y.2d 840, 841 (N.Y. 1999) (citations omitted), to establish intent, <u>People v. Roman</u>, 43 A.D.3d 1282, 1282 (App. Div. 4th Dept. 2007), and to explain the victim's failure to make a prompt complaint, <u>People v. Chase</u>, 277 A.D.2d 1045, 1045 (App. Div. 4th Dept. 2000).

Finally, Petitioner claims that the court erred by not determining, on the record, whether the prejudicial effect of the prior-conduct evidence outweighed its probative value. During its <u>Molineux</u>[2] ruling, the court observed that, the previous day, it had

---

[2]

    <u>People v. Molineux</u>, 168 N.Y. 264 (1901) (evidence of prior crimes or bad acts is admissible to prove a specific crime if it tends to establish motive, intent, absence of mistake or accident, a common scheme or plan between the commission of two or more crimes, or the identity of the person charged with the commission of the crime).

concluded Petitioner's brother's trial, in which it had made the same Molineux determination involving the similar facts. The court viewed that ruling as precedential since it was based on review of the same case law and very similar facts, and also involved the same rationale for admissibility. Notably, Petitioner did not object when the court did not repeat its entire Molineux ruling.

In any event, "in a habeas petition, the petitioner has the burden of proof and cannot rely on the mere absence of evidence to the contrary of his claim. The petitioner must show evidence that the judge abused (or refused to exercise) his discretion. This [petitioner] has not done, and the argument that the court did not properly determine the admissibility of petitioner's prior bad acts therefore fails." Smith v. Riley, 09-CV-3094, 1995 WL 1079778, at *10 (E.D.N.Y. Jan. 26, 1995).

C.   **Erroneous Denial of a Continuance**

Petitioner claims that the court improperly denied defense counsel's request for a postponement of trial to prepare a defense. When a denial of a continuance forms the basis for a habeas claim, the petitioner must show not only that the trial court abused its discretion, but also that the denial was so arbitrary and fundamentally unfair that it violated constitutional principles of due process. See Morris v. Slappy, 461 U.S. 1, 11-12 (1983) ("[B]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon

-14-

expeditiousness in the face of a justifiable request for delay'
violates the right to the assistance of counsel.") (citation
omitted).

As Respondent argues, Petitioner's allegations are
contradicted by the record. The only mention of a trial date at
either of the hearings cited by Petitioner occurred during the
January 30, 2006, hearing, at which the trial court stated that it
was "planning on commencing the trial" on February 1, 2006 (the
date trial ultimately commenced), and defense counsel acquiesced by
stating, "[v]ery good." Thus, it does appear that there was any
request for a continuance, much less a showing by Petitioner that
one was necessary.

**D. Denial of the Equal Protection of the Laws**

Petitioner claims that his equal protection rights were
violated by (1) the trial court's denial of his motion to
adjudicate him as a Youthful Offender on the rape count; and
(2) the refusal of the Appellate Division and Court of Appeals to
address the issue.

This claim is not cognizable on Federal habeas review. Under
New York law, "[t]he decision whether to grant youthful offender
status to an eligible youth generally 'lies within the sound
discretion of the sentencing court.'" <u>People v. Victor J.</u>, 283
A.D.2d 205, 206 (App. Div. 1st Dept. 2001) (citation omitted).
"Denial of youthful offender adjudication does not provide a basis

for habeas relief, because 'it is well established that the United States Constitution grants no independent due process right either to youthful offender treatment or to any particular procedure for denying it, so long as the trial judge imposed a sentence that was lawful under state law.'" <u>Murphy v. Artus</u>, 07 Civ. 9468, 2009 WL 855892, at *7 (S.D.N.Y. Apr. 1, 2009) (quoting <u>Auyeung v. David</u>, 00 Civ. 1353, 2000 WL 1877036, at *3 (S.D.N.Y. Dec. 26, 2000)). Here, because "it is undisputed that [the trial court] considered youthful offender adjudication," Petitioner's claim is not cognizable on federal habeas review. <u>Murphy</u>, 2009 WL 855892, at *7.

### E.   Legal Insufficiency of the Evidence

Petitioner claims that his conviction was based on legally insufficient evidence because the prosecution failed to prove beyond a reasonable doubt (a) that the rape was committed by "forcible compulsion," i.e., by physical force or the threat of immediate death or injury; (b) that Petitioner committed the acts in the time frames alleged in the indictment; and (c) that "specific acts or situations [were] attributable to" Petitioner, rather than "allegations of prior uncharged, unconnected conduct."

As Respondent argues, the claim is procedurally barred because the Appellate Division relied on adequate and independent state law grounds to dismiss it-namely, that Petitioner presented only a "general motion to dismiss" at the close of the People's case; and Petitioner failed to renew his motion after presenting evidence.

See <u>Harris v. Reed</u>, 489 U.S. 255, 260-61, 264 n. 10 (1989) (Federal habeas corpus review of a state conviction is prohibited if a state court judgment is based on an "adequate and independent state ground," such when the state court "explicitly invokes a state procedural bar rule as a separate basis for decision."). It is well-settled under New York law that a defendant must alert the trial court to the specific basis for his dismissal motion in order to preserve an appellate claim for insufficiency of the evidence. E.g., <u>People v. Gray</u>, 86 N.Y.2d 10, 19 (N.Y. 1995).

Although only a "firmly established and regularly followed state practice," <u>James v. Kentucky</u>, 466 U.S. 341, 348-49 (1984), may be deemed adequate to prevent subsequent review by a federal court, the New York contemporaneous objection rule applied by the Appellate Division in Petitioner's case-that a motion to dismiss must alert the trial court to the specific deficiency alleged, and that any such motion must be renewed at the close of defendant's case-has been recognized as just such a firmly established and regularly followed rule. E.g., <u>Mills v. Poole</u>, 06 Civ. 00842, 2008 WL 2699394, at *10-12 (W.D.N.Y. June 30, 2008).

Procedural default will "bar federal habeas review of the federal claim, unless the . . . petitioner can show 'cause' for the default and 'prejudice attributable thereto,'" or demonstrate that "failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" <u>Coleman v. Thompson</u>, 501

U.S. 722, 749-50 (1991) (citations omitted). Petitioner has offered no "cause" for the failure to preserve his insufficiency claim, as he has not asserted an ineffective trial counsel claim in state court or in the instant petition. There is also no prejudice shown, because Petitioner's insufficiency-of-the-evidence claim is meritless. Although the Appellate Division found the sufficiency of the evidence claim unpreserved, the court did find that the verdict was not against the weight of the evidence. People v. Aaron V., 48 A.D.3d at 1201. "The appellate court found that the weight of the evidence supported [petitioner's] conviction so, a fortiori, his conviction was supported by legally sufficient evidence." Horne v. Perlman, 433 F. Supp. 2d 292, 300 (W.D.N.Y. May 23, 2006); see also People v. Danielson, 9 N.Y.3d 342, 349 (N.Y. 2007) ("Necessarily, in conducting its weight of the evidence review, a court must consider the elements of the crime, for even if the prosecution's witnesses were credible their testimony must prove the elements of the crime beyond a reasonable doubt.").

In his Traverse (Docket No. 19), Petitioner has attempted to demonstrate that he is actually innocent so as to satisfy the "fundamental miscarriage of justice" exception and establish a "gateway" through which his procedurally defaulted claim may pass. See Schlup v. Delo, 513 U.S. 298, 325 (1995). The Schlup court has circumscribed the type of evidence on which an actual innocence claim may be based and articulated a demanding standard that

petitioners must meet in order to take advantage of the gateway. E.g., Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004). The petitioner must support his claim "with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial[,]" Schlup, 513 U.S. at 324.   In light of Schlup's explicit requirement of reliability, "the habeas court must determine whether the new evidence is trustworthy by considering it both on its own merits and, where appropriate, in light of the pre-existing evidence in the record." Doe v. Menefee, 391 F.3d at 161 (citing Schlup, 513 U.S. at 327-28). If the district court determines that the new evidence is reliable, the next step is for the court to consider the petitioner's claim of actual innocence "in light of the evidence in the record as a whole, including evidence that might have been inadmissible at trial." Id.   The standard articulated in Schlup "allows the reviewing tribunal also to consider the probative force of relevant evidence that was excluded or unavailable . . . ." 513 U.S. at 327 (citation omitted).

The evidence proffered here fails to satisfy the demanding Schlup criteria. Petitioner and his mother, Deirdre Dye, contend that certain child support records demonstrate that he left New York State on June 7, 1998, and could not have committed the rape as charged. The Court agrees with Respondent that the victim's

testimony is not inconsistent with Petitioner's alleged departure from New York on June 7, 1998, and the brother's graduation in late June 1998.  The victim testified that the rape took place in May 1998, after her thirteenth birthday (i.e., March 19, 1998). She also said that the rape by Petitioner it occurred in the springtime, on the same day that her other brother had molested her, and shortly before the other brother graduated from high school in June 1998.

It bears emphasizing that Petitioner's alleged alibi evidence does not refute Petitioner's signed, voluntary confession, or the evidence of the tape-recorded telephone call between Petitioner and the victim in which Petitioner explicitly admitted to raping her.

Petitioner's mother also states in her affidavit that she took her daughter to a gynecologist for a suspected yeast infection in November 1998, some months after the last alleged incident of abuse. The doctor's office advised her to schedule annual exams when her daughter became sexually active. Petitioner contends that if M.V. in fact had been raped (i.e., was sexually active), then the office would not have made this comment and would have had the mother begin scheduling annual exams. Assuming that doctor's office made this comment, it hardly proves that the repeated acts of rape and molestation did not occur. Tellingly, Petitioner has not submitted any of the victim's medical records to substantiate his claims.

In sum, the new evidence offered by Voymas does not convince this Court that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327. Therefore, he cannot satisfy the Schlup actual innocence standard so as to demonstrate that "fundamental miscarriage of justice" will occur should the Court decline to consider the procedurally defaulted claim.

### E.    Denial of Equal Access to the Courts

Petitioner claims that he was denied "access to the courts" because (1) after petitioner's conviction was affirmed on direct appeal, the New York Court of Appeals ignored Petitioner's letters of inquiry regarding his leave application; (2) he was refused leave to appeal the denial of his C.P.L. § 440.20 motion; and (3) he was not granted a hearing in his state collateral proceedings.

Petitioner has failed to establish that he was prejudiced in any way by the Court of Appeals' delay in responding to his letters, assuming such a delay actually took place.

Turning next to the denial of leave to appeal his C.P.L. § 440.20 motion, Petitioner has not shown that further review by the Appellate Division was warranted. Petitioner's motion alleged that because the was sentenced as a Youthful Offender on the misdemeanor conviction of third degree sexual abuse, he was also required to be sentenced as a Youthful Offender rather than a

Juvenile Offender on the top count, rape in the first degree. There were several unassailable grounds for denial of this motion by the trial court. First, although characterized as a C.P.L. § 440.20 motion to set aside his sentence, it was seeking an order pursuant to C.P.L. § 440.10 setting aside the judgment on the count of rape in the first degree, and replacing it with a Youthful Offender adjudication. Accordingly, the trial court found that because the issue could have been raised on Petitioner's direct appeal, the motion was required to be summarily denied pursuant to C.P.L. § 440.10(2)(c).

Moreover, the trial court found, because the conviction on the misdemeanor count of the indictment (third degree sexual abuse) was reversed on appeal, it was no longer a part of the disposition of and therefore the question was moot. Finally, the trial court found that, even if the Youthful Offender adjudication was still viable, it would have the inherent power to correct errors made at the time of sentencing, such as by striking the Youthful Offender determination.

Petitioner's third contention, that his due process rights were violated by the failure to hold a hearing on his C.P.L. § 440.20 motion and <u>coram nobis</u> application, is without merit. All of the courts in this Circuit have held that Federal habeas relief is not available to redress alleged procedural errors in State post-conviction proceedings. <u>Jones v. Duncan</u>, 162 F. Supp. 2d 204,

218-19 (S.D.N.Y. 2001); Diaz v. Greiner, 110 F. Supp.2d 225, 235 (S.D.N.Y. 2000).

### F.   Ineffective Assistance of Appellate Counsel

The Supreme Court set forth the test for such ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984), which requires a demonstration(1) that counsel's performance was deficient, and (2) "that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. This standard applies in the context of appellate counsel's ineffectiveness. E.g., Hemstreet v. Greiner, 491 F.3d 84, 89 (2d Cir. 2007).

#### 1.   Appellate Counsel's Omission of Allegedly Meritorious Issues

In order to satisfy the first prong of Strickland, it is not enough for a petitioner to show that appellate counsel omitted a colorable argument. Counsel need not raise every nonfrivolous claim, but rather may winnow out weaker arguments on appeal and focus key issues in order to maximize the likelihood of success. Smith v. Robbins, 528 U.S. 259, 288 756 (2000) (citing Jones v. Barnes, 463 U.S. 745, 751-53 (1983)). A petitioner instead must demonstrate that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000)(citing Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).

Construing the <u>pro</u> <u>se</u> petition liberally, Petitioner's allegations do not demonstrate that he was deprived of constitutionally effective assistance on direct appeal.

In particular, given that Petitioner raised insufficient-indictment claim in his <u>pro</u> <u>se</u> supplemental brief on direct appeal, he cannot claim prejudice on grounds that appellate counsel did not raise the same claim. <u>See</u> <u>Abdurrahman v. Henderson</u>, 897 F.2d 71, 75 (2d Cir. 1990) ("Abdurrahman recognizes that the motion to suppress the weapon was denied after a full and fair hearing and ultimately was affirmed by the appellate division after he raised the issue in a pro se supplemental brief. . . [E]ven if these claims had been raised by an attorney instead of by Abdurrahman in his <u>pro</u> <u>se</u> supplemental brief, the outcome of the state appeal would not have been affected.") (citing <u>Strickland</u>, 466 U.S. at 694).

Furthermore, contrary to Petitioner's contention, appellate counsel did raise a <u>Molineux</u> claim in his appellate brief, arguing that the trial court erroneously admitted "propensity evidence" consisting of prior uncharged conduct of Petitioner and his brother.

Petitioner's appellate counsel submitted a 40-page brief on direct appeal to the Appellate Division asserting colorable grounds for reversal. Although appellate counsel overlooked a meritorious issue (i.e., the insufficiency of the indictment claim), Petitioner cannot demonstrate that he was prejudiced because the Appellate

Division granted relief on the claim as presented in his pro se brief. The remaining arguments that Petitioner claims that appellate counsel should have made are uniformly without merit.

### 2.   Failure to Advise Petitioner

Petitioner argues that appellate counsel did not discuss with him strategies for the appeal or assist him drafting a pro se supplemental brief. This argument is meritless.

"An appellate attorney's failure to communicate with his or her client, by itself, does not constitute per se ineffective assistance of counsel." McIntyre v. Duncan, 03-CV-0523, 2005 WL 3018698, at *3 (E.D.N.Y. Nov. 8, 2005) (citing Buitrago v. Scully, 705 F. Supp. 952, 955 (S.D.N.Y. 1989)); accord Campbell v. Greene, 440 F. Supp.2d 125, 152 (N.D.N.Y. 2006). "Although it may be desirable and productive, the Constitutional right to effective assistance of counsel does not encompass the requirement that an attorney consult with his client to discuss the alleged trial errors that his client wishes to pursue." McIntyre, 2005 WL 3018698, at *3 (citing Smith v. Cox, 435 F.2d 453, 458 (4th Cir. 1970), vacated on other grounds by Slayton v. Smith, 404 U.S. 53 (1971)). "[T]he Supreme Court has made clear that it is appellate counsel exercising discretion, after a professional evaluation of the trial record, who controls the preparation of the appellate brief." Warren v. Napoli, 05 Civ. 8438, 2009 WL 2447757, at *18 (S.D.N.Y. Aug. 10, 2009) (citing Jones v. Barnes, 463 U.S. at 751).

Therefore, Voymas' assertions that his appellate counsel failed to consult with him prior to filing the appellate brief and obtain his consent about which claims to raise, or failed to incorporate the arguments asserted by Petitioner in his pro se brief, do not, without more, establish that Voymas received ineffective assistance. Accord, e.g., Campbell, 440 F. Supp.2d at 152. Moreover, the Court has been unable to find any support for Petitioner's claim that counsel was required to assist him in drafting his supplemental pro se brief. To the contrary, given that appellate counsel was not required to consult with Petitioner regarding the claims to be submitted in the principal brief, appellate counsel a fortiori was not required to confer with Petitioner regarding his pro se submission.

**III. Petitioner's Motion to Appoint Counsel (Docket No. 17)**

The Supreme Court has clearly held that prisoners have no constitutional right to counsel when bringing collateral attacks upon their convictions. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); accord Green v. Abrams, 984 F.2d 41, 47 (2d Cir. 1993). Rather, the appointment of counsel is a matter of discretion. Wright v. West, 505 U.S. 277, 293 (1992).

In determining when a district court may appoint counsel under 28 U.S.C. § 1915(d) for indigents in civil cases, such as petitions for a writ of habeas corpus under 28 U.S.C. § 2254, the court first should "determine whether the indigent's position seems likely to

be of substance." <u>Hendricks v. Coughlin</u>, 114 F.3d 390, 392 (2d Cir. 1997). Once it is determined that the claim meets the threshold merits requirement, the Court should consider a number of other factors, including (1) the nature of the factual issues the claim presents, and petitioner's ability to conduct an investigation of the facts; (2) whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder; (3) petitioner's apparent ability to present the case; (4) whether the legal issues involved are complex; (5) whether appointment of counsel would lead to a quicker and more just determination of the case; and (6) petitioner's efforts to obtain counsel. <u>Hodge v. Police Officers</u>, 802 F.2d 58, 61-62 (2d Cir. 1986).

Petitioner states that he requires legal assistance because he is a layman and unschooled in the law. However, he has not shown himself to be unable to present the facts relevant to disposition of his habeas petition or to understand his legal position. Similarly, he has not demonstrated that the legal issues in his case are so complicated as to require the assistance of an attorney, or that appointment of counsel would lead to a more just determination.

The Court finds that the interests of justice do not necessitate the appointment of counsel in this case, and Petitioner's motion for the appointment of counsel (Docket No. 17)

is denied. The denial is with prejudice, given the Court's concomitant dismissal of his habeas petition on the merits.

## IV. Respondent's Motion to Strike Portions of Petitioner's Traverse and to Seal the Traverse (Docket No. 20)

### A. Motion to Strike Portions of the Traverse

Respondent has filed a motion to strike (Docket No. 2) portions of Petitioner's traverse, filed June 17, 2010, which attaches and relies upon certain exhibits that, as Respondent points out, were never presented to the state courts. Specifically, petitioner has included the affidavit of his and the victim's mother, Deirdre Dye, dated June 11, 2010; Petitioner's affirmation dated June 15, 2010, and certain other documents which Petitioner contends demonstrate his "actual innocence" of first degree rape.

The Court has considered Voymas' allegations of "actual innocence" in the Traverse insofar as they relate to his attempt to overcome the procedural default of certain habeas claims. However, the Court declines to consider any new "stand-alone" or "freestanding" claims of actual innocence or ineffective assistance of appellate counsel in his Traverse. Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts provides, in part, that "[t]he petition must . . . specify all grounds for relief available to the petitioner." Rule 2(c)(1) of the Rules Governing Section 2254 Cases in the United States District Courts. "In light of this Rule, it has been recognized that a traverse is not the proper pleading in which to raise additional grounds for

-28-

habeas relief." <u>Parker v. Duncan</u>, 03-CV-0759 (LEK/RFT), 2007 WL 2071745, at *6 (N.D.N.Y. July 17, 2007) (citations omitted); <u>accord</u>, <u>e.g.</u>, <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994)); <u>Jones v. Artus</u>, 615 F. Supp.2d 77, 85 (W.D.N.Y. 2009). District courts have held that habeas claims raised for the first time in a reply memorandum or traverse are not properly considered. <u>Parker</u>, 2007 WL 2071745, at *6 (citing <u>Haupt</u>, 2005 WL 1518265, at *2 n. 3) <u>Simpson v. United States</u>, 5:03-CV-691, 2005 WL 3159657 (N.D.N.Y. Nov. 25, 2005) (declining to consider habeas claims "raised for the first time in [Petitioner's] Traverse").

In any event, a freestanding claim of innocence based on newly discovered evidence has never been a basis for federal habeas relief absent an independent constitutional violation occurring in the state trial. <u>Herrera v. Collins</u>, 506 U.S. 390, 398-99 (1993). The <u>Herrera</u> court assumed for the sake of argument "that in a <u>capital</u> case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." <u>Id.</u> at 417 (emphasis supplied); <u>see</u> <u>also</u> <u>id.</u> at 427 (O'Connor, J., concurring).

In <u>House v. Bell</u>, 547 U.S. 518 (2006), a capital habeas case, the Supreme Court explained its precedent as implying at the least that <u>Herrera</u> requires more convincing proof of innocence than <u>Schlup</u>'s "gateway" actual innocence standard. <u>House</u>, 547 U.S. at

555. The Supreme Court declined to answer the question left open in Herrera of whether a habeas petitioner may bring a freestanding claim of actual innocence.    Rather, the Supreme Court concluded, as in Herrera, that "whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it[,]" although he had satisfied the Schlup gateway standard.

Even assuming for the sake of argument that a freestanding actual innocence claim, without an underlying constitutional trial violation, is amenable to Federal habeas review in a non-capital case, the allegedly new evidence proffered in this case simply cannot satisfy the "extraordinarily high," 506 U.S. at 417, hypothetical Herrera standard. Because, as discussed above, Petitioner's new evidence falls short of the Schlup standard, it necessarily fails the more stringent Herrera test. See House, 547 U.S. at 555.

**B.   Motion to Seal the Traverse**

Respondent has also moved (Docket No. 20) to seal Petitioner's Traverse dated June 17, 2010 (Docket No. 19) in accordance with N.Y. Civil Rights Law § 50-b for the protection of the victim's identity.

In an Order dated May 11, 2010, this Court placed under seal the state court records, including the trial transcripts, submitted by Respondent previously in this case. In accordance with this Order, Respondent's motion to seal (Docket No. 20) is granted.

## V.    Conclusion

For the reasons stated above, Aaron Voymas' Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the Petition is dismissed. Voymas' Motion to Appoint Counsel Stay (Docket No. 17) is denied with prejudice. Respondent's Motion to Strike Portions of the Traverse and Seal the Traverse (Docket No. 20) is granted in part. Specifically, the Court declines to consider new, unexhausted claims raised for the first time in this responsive pleading, and the entire Traverse is placed under seal. The motion is denied to the extent that the Court has considered Petitioner's claims of actual innocence insofar as they relate to the procedural default of his insufficiency-of-the-evidence claim.

Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2).  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal in forma pauperis.

**SO ORDERED.**

S/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

DATED:    July 7, 2011
Rochester, New York

-31-